William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Attorneys for Defendant
INSOMNIAC HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN BALLARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INSOMNIAC HOLDINGS, LLC,<br><br>Defendant. | Case No. 3:25-cv-00811-SI<br>Hon. Susan Illston<br><br>**DEFENDANT INSOMNIAC HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: May 30, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th Floor |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 2

    A.    Insomniac Is Not a "Video Tape Service Provider." ...................................... 2

        1.    Plaintiff's conception of what constitutes a VTSP ignores the relevant case law. ...................................................................... 2

        2.    Applying the appropriate legal standard, the Complaint does not plausibly allege Insomniac is a VTSP. .......................... 4

        3.    *Sellers* and *Mata* cannot salvage Plaintiff's defective claim. ......... 5

        4.    Plaintiff's failure to plausibly allege Insomniac is a VTSP is an appropriate basis for dismissal. .................................... 7

    B.    Plaintiff Is Not a VPPA "Consumer." ............................................................ 9

        1.    The Court should adopt the reasoning of the Sixth Circuit in *Salazar v. Paramount Global.* ................................................ 10

        2.    Insomniac's – and the Sixth Circuit's – interpretation of the VPPA accords with Supreme Court and Ninth Circuit authority on statutory interpretation. ........................................ 11

        3.    Plaintiff's approach also risks turning any website with embedded video into a VPPA defendant. ..................................... 14

    C.    Defendant Did Not Knowingly Disclose Plaintiff's Personally Identifiable Information. .......................................................................... 15

III.  CONCLUSION ........................................................................................................ 15

REPLY IN SUPPORT OF DEFENDANT INSOMNIAC HOLDINGS, LLC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Tobacco Co. v. Patterson,*
    456 U.S. 63 (1982) ............................................................................................ 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 9

*Bloate v. United States,*
    559 U.S. 196 (2010) ......................................................................................... 12

*California River Watch v. City of Vacaville,*
    39 F.4th 624 (9th Cir. 2022) ...................................................................... 12, 13

*Cantu v. Tapestry, Inc.,*
    697 F. Supp. 3d 989 (S.D. Cal. 2023) .............................................................. 2

*Carroll v. Chick-fil-A, Inc.,*
    2024 WL 1091193 (N.D. Cal. 2024) ........................................................... 3, 4

*Carroll v. Gen. Mills, Inc.,*
    2023 WL 4361093 (C.D. Cal. 2023) ................................................................ 3

*Dubin v. United States,*
    599 U.S. 110 (2023) ......................................................................................... 10

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017) .......................................................................... 15

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018) ......................................................................................... 10

*FCC v. AT&T, Inc.,*
    562 U.S. 397 (2011) ......................................................................................... 11

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ......................................................................................... 11

*Gardner v. Me-TV National Ltd. Partnership,*
    132 F.4th 1022 (7th Cir. 2025) ........................................................................ 9

*Gustafson v. Alloyd Co., Inc.,*
    513 U.S. 561 (1995) ......................................................................................... 13

*Helvering v. Gregory,*
  69 F.2d 809 (2d Cir. 1934) ............................................................................. 10

*Hernandez v. Container Store, Inc.,*
  2024 WL 72657 (C.D. Cal. 2024) ................................................................. 2, 4

*Hernandez v. Jostens, Inc.,*
  2024 WL 1135165 (C.D. Cal. 2024) ................................................................. 3

*King v. Burwell,*
  576 U.S. 473 (2015) ................................................................................. 11, 12

*Markels v. AARP,*
  689 F. Supp. 3d 722 (N.D. Cal. 2023) ............................................................. 4

*Mata v. Zillow Grp., Inc.,*
  2024 WL 5161955 (S.D. Cal. 2024) ....................................................... *passim*

*Osheske v. Silver Cinemas Acquisition Co.,*
  132 F.4th 1110 (9th Cir. 2025) ...................................................................... 13

*Rodriguez v. Hershey Co.,*
  2023 WL 6798506 (S.D. Cal. 2023) ......................................................... 3, 4, 8

*Sackett v. EPA,*
  598 U.S. 651 (2023) ...................................................................................... 11

*Salazar v. National Basketball Ass'n,*
  118 F.4th 533 (2d Cir. 2024) ........................................................................... 9

*Salazar v. Paramount Glob.,*
  133 F.4th 642 (6th Cir. 2025) ................................................................ *passim*

*Schneider v. California Dep't of Corr.,*
  151 F.3d 1194 (9th Cir. 1998) ......................................................................... 8

*Sellers v. Bleacher Rep., Inc.,*
  2023 WL 4850180 (N.D. Cal. 2023) ......................................................... 3, 5, 6

*Stark v. Patreon, Inc.,*
  635 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................................. 4

*Sw. Airlines Co. v. Saxon,*
  596 U.S. 450 (2022) ...................................................................................... 11

*Tawam v. Feld Entm't Inc.,*
  684 F. Supp. 3d 1056 (S.D. Cal. 2023) ............................................................ 3

*United States v. Williams,*
    553 U.S. 285 (2008) ............................................................................................ 13

*In re Vizio, Inc., Consumer Priv. Litig.,*
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................... 2

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ..................................................................................... 9, 14

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ......................................................................................... 14

*Yates v. United States,*
    574 U.S. 528 (2015) ......................................................................................... 12

**Statutes**

18 U.S.C. § 2710(a)(1) ................................................................................... 9, 10

18 U.S.C. § 2710(a)(4) ................................................................................. 10, 11

42 U.S.C. § 18031 .............................................................................................. 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 8

1

<u>**REPLY MEMORANDUM**</u>

2    I.    <u>**INTRODUCTION**</u>

3         Defendant Insomniac Holdings, LLC filed a Motion to Dismiss identifying

4    multiple, independent bases for the Court to dismiss Plaintiff Austin Ballard's

5    Complaint.  Nothing in Plaintiff's Opposition compels a contrary conclusion.

6         ***First***, even though Insomniac bears no resemblance to the video store from

7    which Judge Robert Bork rented videocassette tapes in the late 1980s, Plaintiff

8    nevertheless contends it must be a "video tape service provider" ("VTSP") within the

9    meaning of the VPPA because "Defendant offers a massive library of prerecorded

10   videos" on its website.  Compl. ¶ 1, ECF No. 1.  But this lone allegation cannot

11   salvage Plaintiff's VPPA claim.  At bottom, Plaintiff has not pleaded that renting,

12   selling, or delivering the video content at issue is Insomniac's "particular field of

13   endeavor," and so, his VPPA claim fails.

14        ***Second***, although it is undisputed he never rented, purchased, or subscribed to

15   any audio visual material from Insomniac, Plaintiff insists he is a "consumer" under

16   the VPPA.  As anticipated, he relies on out-of-circuit authority on one side of a

17   nascent circuit split on this question.  But the opinions of the Second and Seventh

18   Circuits cannot be squared with the plain language of the VPPA when viewed in its

19   proper context, as the Sixth Circuit (and the majority of district courts in the Ninth

20   Circuit) have held.  Although this Court need not even reach this issue, since

21   Plaintiff has not adequately pleaded Insomniac is a VTSP, in the event it does, it

22   should reject Plaintiff's overbroad and untenable definition of "consumer."

23        ***Third***, in his Opposition, Plaintiff fails to address the Complaint's lack of

24   crucial factual allegations bearing on his claim that Insomniac knowingly disclosed

25   his personally identifiable information ("PII").  The omission of such allegations

26   independently dooms his VPPA claim.

27        In sum, none of Plaintiff's arguments can cure the fatal defects of his

28   Complaint, and the Court should thus grant Insomniac's Motion.

## II.     ARGUMENT

### A.     Insomniac Is Not a "Video Tape Service Provider."

In his Opposition, Plaintiff presents a litany of flawed arguments why the Court should not dismiss his defective VPPA claim.  None of these arguments holds water, and the Court should dismiss the Complaint because Plaintiff has not adequately alleged Insomniac is a VTSP.

> 1.  *Plaintiff's conception of what constitutes a VTSP ignores the relevant case law.*

Ignoring the overwhelming weight of authority in the Ninth Circuit, Plaintiff incorrectly attempts to reframe the VTSP inquiry as solely about the *quantity* of videos on Insomniac's website, rather than primarily about their *role* within Insomniac's business.  Plaintiff argues that "[t]he Complaint is clear: 'Defendant offers a massive library of prerecorded videos.'"  Opp'n 4:20–21 (quoting Compl. ¶ 1), ECF No. 22; *see also id.* at 6:7 (noting "sheer number of videos"), 6:21 (discussing "sheer volume of videos on Defendant's Website").  According to Plaintiff, this single allegation "plausibly establishes that Defendant is a VTSP at the pleadings stage."  Opp'n 4:21–22.  But Plaintiff is simply incorrect.

"[D]istrict courts across the country have settled on a core set of factors to use in determining whether a defendant may be a video tape service provider subject to the VPPA."  *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023).  To be "engaged in the business" of video content under the VPPA, video content must be a company's "'particular field of endeavor.'"  *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (citations omitted).  In other words, "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose."  *Id.*  It is thus not enough that a business "host[] and creat[e] prerecorded videos for the purpose of marketing its products."  *Cantu*, 697 F. Supp. 3d at 993.  The videos must "*themselves* [be] the goods on offer."  *Hernandez v. Container Store, Inc.*, 2024 WL

72657, at *2 (C.D. Cal. Jan. 3, 2024) (emphasis added); *see also Hernandez v. Jostens, Inc.*, 2024 WL 1135165, at *2 (C.D. Cal. Feb. 7, 2024) (same).

This distinction—between video content that is *itself* the product offered and video content that is instead deployed *in service of* the product offered—is dispositive. It explains why an online publisher of sports news in video form may be a VTSP, but a fast-food restaurant chain using videos to attract customers for its fried chicken sandwiches is not. *Compare Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (Illston, J.), *with Carroll v. Chick-fil-A, Inc.*, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024). Similarly, an online aggregator of real estate listings that utilizes video walkthroughs to showcase them may be a VTSP, while an event promoter using online videos to entice attendees to its monster truck rallies is not. *Compare Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024), *with Tawam v. Feld Entm't Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). Importantly, this distinction is also consistent with the VPPA's purpose to regulate only those companies whose "business[es are] centered, tailored, or focused around providing and delivering audiovisual content." *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023) ("The videos on the website are part of Defendant's brand awareness, but they are not Defendant's particular field of endeavor.").

*Rodriguez v. Hershey Co.*, 2023 WL 6798506 (S.D. Cal. Oct. 12, 2023), highlights the importance of this distinction. In that case, the plaintiff alleged that Hershey, a manufacturer of chocolate and other snack products, was a VTSP because its "business model involve[d] persuading potential customers to try their products via the use of persuasive marketing videos" that Hershey "'create[d], host[ed], and deliver[ed]'" on its website. *Id.* at *2 (citation omitted). In granting Hershey's motion to dismiss, the district court explained:

> The allegation that Defendant uses videos to market their
> product indicates that delivering audiovisual material is
> ancillary to Defendant's true business purposes. This finding is

REPLY IN SUPPORT OF DEFENDANT INSOMNIAC HOLDINGS, LLC'S MOTION TO DISMISS

bolstered by Plaintiff's own language that **Defendant's business model merely "involves" marketing through the use of videos rather than being tailored to serve the purpose of delivering videos.** At bottom, the videos on Defendant's website are part of Defendant's brand awareness and are not Defendant's particular field of endeavor.

*Id.* (emphasis added). So too here.

Further dooming Plaintiff's claim that a single factual allegation— "Defendant offers a massive library of prerecorded videos"—establishes Insomniac as a VTSP, courts in the Ninth Circuit have explicitly rejected similar arguments. *See Carroll*, 2024 WL 1091193, at *1 ("The plaintiffs' sole factual allegation . . . that there is more than one video on Chick-fil-A's websites . . . is not sufficient to plausibly allege that Chick-fil-A is 'substantially involved in the conveyance of video content to consumers' or that its products are 'significantly tailored to serve that purpose.'") (citation omitted); *Hernandez*, 2024 WL 72657, at *2 ("Plaintiff's contentions about the 'significant expense' incurred in producing 'numerous' pre-recorded videos do not transmute this 'marketing channel' into the central focus of Defendant's business.") (citation omitted); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) (allegation that a defendant "creates and maintains the [video] content" insufficient).[1] This Court should likewise reject Plaintiff's argument.

   2. *Applying the appropriate legal standard, the Complaint does not plausibly allege Insomniac is a VTSP.*

Putting aside the Complaint's conclusory allegation that Insomniac is a VTSP, *see* Compl. ¶ 48, the Complaint is otherwise devoid of factual content establishing

---

[1]   The three nonbinding district court cases from other circuits cited by Plaintiff do not help his cause. *See* Opp'n 4:22–5:9 (citing cases). These cases do not upend the consistent interpretation of the VPPA by the district courts in the Ninth Circuit. *See supra* Section II.A.1. From *within* the Ninth Circuit, Plaintiff offers only one misleadingly quoted case that is readily distinguishable from the situation presented here. *See* Opp'n 4:28–5:3 (citing *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841 (N.D. Cal. 2022)). In addition to being *dicta*, the quoted language, in context, does not in any way suggest that every business alleged to be operating a website with a library of videos is a VTSP.

video content is Insomniac's "particular field of endeavor."  Although Plaintiff takes

issue with Insomniac's characterization of itself as an "event management company"

and its videos as "marketing," *see* Opp'n 5:10–12, these characterizations are pulled

**straight from the Complaint**.  After all, it is Plaintiff who has repeatedly referred to

Insomniac principally as an "event management company," Opp'n 1:14 (citing Compl.

¶ 1), and every allegation in the Complaint concerning Insomniac's video content

confirms its *marketing* function.  *See, e.g.*, Compl. ¶ 1 (alleging "videos showcas[e]

Insomniac TV, trailers for upcoming events, and recaps of past events").  Indeed,

even in his Opposition, Plaintiff concedes the Complaint "alleges that the 'video

content' on Defendant's Website is tailored to (1) entice consumers to 'purchase event

tickets,' and (2) 'stay informed of [] upcoming events, promotions and shows.'"  Opp'n

5:13–15 (quoting Compl. ¶ 6).  This description could easily substitute as a dictionary

definition of the word "marketing."  *See Marketing*, Merriam-Webster.com (def. 1b),

https://www.merriam-webster.com/dictionary/marketing (last visited May 1, 2025)

(defining marketing as "the process or technique of promoting, selling, and

distributing a product or service").  And according to Plaintiff, it is "self-evident" that

Defendant "operates the Website" for its primary business purpose of "sell[ing]

tickets to events."  Opp'n 5:15–16.

Based on Plaintiff's allegations in the Complaint, the "products" offered by

Insomniac are its live events, while the videos serve the subordinate purpose of

driving consumers to those "products."  For this reason, Plaintiff has not plausibly

alleged Insomniac is "engaged in the business" of delivering video content.

### 3.  Sellers *and* Mata *cannot salvage Plaintiff's defective claim.*

Plaintiff attempts to rely on *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180

(N.D. Cal. July 28, 2023) (Illston, J.), and *Mata v. Zillow Group, Inc.*, 2024 WL

5161955 (S.D. Cal. Dec. 18, 2024), but these cases cannot save his VPPA claim.  To

the contrary, both cases are consistent with the weight of authority in the Ninth

Circuit distinguishing between video content that is *itself* the product on offer and

1   video content that is instead deployed *in service of* the product on offer.  *See supra*

2   Section II.A.1.

3        In *Sellers*, the plaintiff alleged that the defendant's website "publishe[d]

4   content about sports and sports culture" in the form of "articles and videos."  2023

5   WL 4850180, at *1 (citations omitted).  Defendant argued it was not a VTSP "because

6   'similar audio visual materials' did not encompass the short video clips that formed

7   part of the sports news commentary offered" on its website.  *Id.* at *5 (cleaned up).

8   This Court first noted that "courts have held that the VPPA does not apply to retail

9   websites that provide audio visual media that is incidental to their primary

10  business," before proceeding to *distinguish* these cases: "But these are primarily

11  retail companies that use videos incidentally to sell their retail goods – *not*

12  *companies for whom the videos are the product*."  *Id.* at *6 (emphasis added).  This

13  Court then recognized that "*[o]ther* courts have held that websites that provide video

14  content as well as other media content – including news organizations – are video

15  tape service providers under the VPPA."  *Id.* (emphasis added).[2]  Because defendant's

16  argument raised factual questions about its business model (i.e., the "degree" to

17  which it was tailored to video delivery) that were premature at the pleadings stage,

18  this Court denied the defendant's motion to dismiss.  *Id.*  But *Sellers* is

19  distinguishable from the present case because the video content at issue in that

20  case—sports commentary in the form of video clips—was *itself* the product being

21  offered.  Here, by contrast, it is indisputable the music festivals are the products

22  offered.

23       *Mata* is similarly distinguishable because the video content at issue therein

24  was *itself* the product being offered.  The defendant did not own the real estate

25

---

26  [2]  Contrary to Plaintiff's mischaracterization otherwise, nothing in *Sellers* suggests
         that "websites that provide video content as well as other media content –
27       including news organizations – are video tape service providers under the VPPA."
         Opp'n 3:23–25 (citing *Sellers*, 2023 WL 4850180, at *6).
28

1    listings being shown through the video tour walkthroughs at issue.  *See Mata*, 2024

2    WL 5161955, at *3 ("Defendant's audiovisual technology is what attracts real estate

3    agents and sellers to list *their* properties on Zillow.com in the first place.") (emphasis

4    added).  The district court recognized that "[p]eripheral or passive involvement in

5    delivering audiovisual material—such as for advertising or marketing purposes—is

6    insufficient," but rejected defendant's argument that it was using the video tour

7    walkthroughs "merely for advertising."  *Id.* at *2.  Based on the allegations in the

8    complaint, the court concluded that "[p]laintiff plausibly allege[d] that, in serving as

9    a marketplace, 'a key element of Defendant's business model [was] to showcase for-

10   sale residential properties and properties available for lease on its website using ...

11   video content.'"  *Id.* at *3 (citation omitted).  Here, by contrast, the allegations in the

12   Complaint confirm that Insomniac is "using video content to market [its] *own*

13   products," i.e., the music festivals.  *Id.*; *see also supra* Section II.A.2.  And the videos

14   advertising past and upcoming music festivals are "merely a means to achieve" its

15   business purpose of "profit[ing] from the sale of [its] products."  *Mata*, 2024 WL

16   5161955, at *3.  Plaintiff's reliance on *Mata* is therefore misplaced.

    4.   *Plaintiff's failure to plausibly allege Insomniac is a VTSP is an*
         *appropriate basis for dismissal.*

19       Ostensibly realizing the law and facts are not on his side, Plaintiff pivots to

20   arguing that the very question here—whether Insomniac is "engaged in the business"

21   of delivering video content—requires looking "beyond the four corners of the

22   Complaint and [is] therefore an inappropriate basis for dismissal."  Opp'n 5:10–12.

23   Not so.  Other than the video library on Insomniac's website, which Plaintiff

24   incorporated by reference into the Complaint,[3] Defendant has not asked the Court to

25   consider *any* information outside the Complaint.  And based solely on Plaintiff's own

26   allegations, Insomniac's business model "'*involves*' marketing through the use of

---

[3]   Because Plaintiff does not oppose Insomniac's Request for Judicial Notice, the
      Court should grant that request.

videos"; the business is not itself the delivery of videos.  *Rodriguez*, 2023 WL
6798506, at *2; *see also supra* Section II.A.2.  To reiterate Plaintiff's own words: "It is
self-evident that Defendant operates the Website to ***sell tickets to events*** . . . ."  Opp'n
5:15–16 (emphasis added).

Moreover, if anyone is guilty of straying beyond the four corners of the
Complaint, it is Plaintiff.  In an improper attempt to complicate the clear picture
presented by his own Complaint and avoid dismissal, Plaintiff makes a number of
unfounded and inaccurate factual claims nowhere to be found in the Complaint.  *See,
e.g.,* Opp'n 5:26–6:2 (claiming "the videos on Defendant's Website attract . . . other
musical festival vendors (e.g., Live Nation) to choose Defendant's Website in deciding
to . . . host an event"), 6:4–6 ("Nor would it be difficult to envision other musical
festivals choosing to partner with another company, such as Eventbrite or Fever, if
Defendant's Website had poor functionality without its video content."), 6:24–7:3
("Furthermore, Defendant's Website functions as a hub for music festivals hosted
across the world—including events in Asia and South America where Defendant does
not operate—and the Website's audio visual materials play a crucial role in
attracting vendors to promote and sell their events through Defendant's Website.").
The Court must disregard these allegations in determining whether dismissal is
warranted here.  *See, e.g., Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197
n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiffs'] opposition
motion, however, are irrelevant for Rule 12(b)(6) purposes.  In determining the
propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a
plaintiff's moving papers, such as a memorandum in opposition to a defendant's
motion to dismiss.") (citations omitted).

Plaintiff also argues the VTSP question here implicates "'factual questions' ill-
suited for resolution 'at the motion to dismiss stage.'"  Opp'n 4:4–5.  But Plaintiff's
conclusory attempt to manufacture an issue of fact to avoid dismissal should not be
permitted.  For one, district courts in the Ninth Circuit routinely decide this issue on

1    the pleadings.  *See* Mot. 5:27–7:3 (collecting cases), ECF No. 14.  Moreover, the

2    material factual allegations in the Complaint, taken as true, fail to establish a

3    plausible claim for relief.  Because there are no truthful allegations (nor could there

4    ever be) that Insomniac's "particular field of endeavor" is the delivery of video

5    content, dismissal is warranted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

6    ("Determining whether a complaint states a plausible claim for relief will . . . be a

7    context-specific task that requires the reviewing court to draw on its judicial

8    experience and common sense.").

9        Plaintiff has not plausibly alleged Insomniac is a VTSP, and, on this basis

10   alone, the Complaint should be dismissed in its entirety.

11       **B.    Plaintiff Is Not a VPPA "Consumer."**

12       The protections of the VPPA are explicitly limited to "consumers," which the

13   statute defines as "any renter, purchaser, or subscriber of goods or services from a

14   video tape service provider."  18 U.S.C. § 2710(a)(1).  In its Motion, Insomniac argued

15   that, because Plaintiff does not allege he rented, purchased, or subscribed to any

16   audio visual content from Insomniac, he is not a VPPA "consumer."  *See* Mot. 8–10.

17   This interpretation of the VPPA comports with the history and purpose of the statute

18   as well as the "fundamental canon of statutory construction that the words of a

19   statute must be read in their context and with a view to their place in the overall

20   statutory scheme."  *Salazar v. Paramount Glob.*, 133 F.4th 642, 650 (6th Cir. 2025)

21   (quoting *West Virginia v. EPA*, 597 U.S. 697, 721 (2022)).

22       As anticipated, Plaintiff responds by insisting that this Court should instead

23   follow the Second Circuit in *Salazar v. National Basketball Ass'n*, 118 F.4th 533 (2d

24   Cir. 2024), and, more recently, the Seventh Circuit in *Gardner v. Me-TV National

25   Ltd. Partnership*, 132 F.4th 1022 (7th Cir. 2025).[4]  However, to do so would be in

26

27   ───────────────────────
     [4]   Plaintiff also claims, incorrectly, that "the most recent authority among district
28       courts in the Ninth Circuit follows the Second Circuit's reasoning in *Salazar*."
         Opp'n 10:7–9 (citing *Mata*, 2024 WL 5161955).  But Plaintiff mischaracterizes

1    error, because Plaintiff – and, respectfully, the Second and Seventh Circuits –

2    misinterpret the statute's plain language when viewed, as it must be, in the

3    appropriate context.

4           1.  *The Court should adopt the reasoning of the Sixth Circuit in* Salazar v.

5              Paramount Global.

6          Plaintiff correctly points out the most recent federal appellate court to weigh

7    in on this question, the Sixth Circuit in *Salazar v. Paramount Global*, 133 F.4th 642

8    (6th Cir. April 3, 2025), broke sharply from the Second and Seventh Circuits'

9    interpretation of the term "consumer" in the VPPA.  Under factual circumstances

10   similar to those presented here, the Sixth Circuit held that, under the VPPA, "a

11   person is a 'consumer' only when he subscribes to 'goods or services' in the nature of

12   'video cassette tapes or similar audio visual materials.'"  *Id.* at 650–51 (citing 18

13   U.S.C. § 2710(a)(1), (a)(4)); *see also id.* at 651 ("[T]he terms 'goods or services' are

14   linked to those goods and services provided by a company when it is acting as a 'video

15   tape service provider'—namely 'audio visual materials.'").

16         In reaching this conclusion, the Sixth Circuit first considered and rejected the

17   argument, also made by Plaintiff here, that the statutory terms "goods or services"

18   should be simply afforded their ordinary, dictionary definitions (i.e., "society's entire

19   economic output") as contrary to fundamental statutory interpretation principles.  *Id.*

20   at 649 (citation omitted).  As the Sixth Circuit explained:

21           [The plaintiff] errs by reading the terms "goods or services" "in
        isolation," yielding a definition of "consumer" based "solely on

22           the broadest imaginable definitions of its component words."
        *Dubin v. United States*, 599 U.S. 110, 143 S. Ct. 1557, 1566

23           (2023) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 138 S. Ct.
        1612, 1631 (2018)).  Learned jurists have long cautioned against

24           making this very mistake. *See Helvering v. Gregory*, 69 F.2d

25   _____

26      *Mata*.  Although the court cited *Salazar* for the undisputed point that "someone
   doesn't have to spend money to be a VPPA 'subscriber,'" *Mata*, 2024 WL 5161955,

27      at *3, it also explicitly held the plaintiff was a "consumer" because there was a
   sufficient nexus between his subscription and Zillow's video content.  *Id.* at *3-4.

28      *Mata* thus accords with pre-*Salazar* authority in the Ninth Circuit.

809, 810–11 (2d Cir. 1934) (L. Hand, J.) ("[T]he meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create."); *FCC v. AT&T, Inc.*, 562 U.S. 397, 406, 131 S.Ct. 1177 (2011) ("[T]wo words together may assume a more particular meaning than those words in isolation.").

We don't scrutinize a statute atomistically—chopping it up and giving each word the broadest possible meaning. "Our duty, after all, is to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486, 135 S.Ct. 2480 (2015) (internal quotation marks omitted). And often the meaning of a word or phrase "may only become evident when placed in context." *Sackett v. EPA*, 598 U.S. 651, 143 S. Ct. 1322, 1338 (2023) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291 (2000)).

*Id.* at 649-50.

Invoking hornbook interpretive canons like *noscitur a sociis* and the associated-words canon, the Sixth Circuit then concluded the VPPA "tethers the definition of 'consumer' to that of 'video tape service provider,'" which in turn "pinpoints the relevant 'goods and services': those involved in the 'rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials.'" *Id.* at 650 (citing 18 U.S.C. § 2710(a)(4)). "Together, 'text and context point to the same place:' the expression 'goods or services' is limited to audiovisual ones." *Id.* at 651 (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 459 (2022)).

The Sixth Circuit's reasoning is contextually sound and consistent with the VPPA's purpose and legislative history, and this Court should thus adopt it.

> 2. *Insomniac's – and the Sixth Circuit's – interpretation of the VPPA accords with Supreme Court and Ninth Circuit authority on statutory interpretation.*

The Sixth Circuit's approach is also consistent with Supreme Court and Ninth Circuit authority on statutory construction, both of which place great importance on reading statutory terms in context. *See, e.g., King v. Burwell*, 576 U.S. 473, 492 (2015) ("[W]e 'must do our best, bearing in mind the fundamental canon of statutory

construction that the words of a statute must be read in their context and with a
view to their place in the overall statutory scheme.'") (citation omitted); *Yates v.
United States*, 574 U.S. 528, 537 (2015) (admonishing against "'ascribing to one word
a meaning so broad that it is inconsistent with its accompanying words, thus giving
unintended breadth to the Acts of Congress'") (citation omitted); *California River
Watch v. City of Vacaville*, 39 F.4th 624, 630 (9th Cir. 2022) ("Sometimes looking at
dictionary definitions in isolation can lead us astray.") (citing *Bloate v. United States*,
559 U.S. 196, 205 n.9 (2010)).

For example, in *King v. Burwell*, the Supreme Court was confronted with the
question whether people living in states where the federal government had set up
healthcare exchanges under the Affordable Care Act could claim tax credits available
to those who purchased health insurance on "an Exchange established by the State
under [42 U.S.C. § 18031]." 576 U.S. at 485. The Supreme Court held they could,
concluding that the phrase "an Exchange established by the State under [42 U.S.C.
§ 18031]" should not be read literally and in isolation but, rather, in context to
include a *federal* exchange as well. *See id.* at 498.

The Court acknowledged that "[a]t the outset, it might seem that a Federal
Exchange cannot fulfill this requirement. After all, the Act defines 'State' to mean
'each of the 50 States and the District of Columbia'—a definition that does not
include the Federal Government." *Id.* at 487. However, "when read in context, with
a view to its place in the statutory scheme," the Court concluded this definition was
not so narrow. *Id.* (cleaned up). As the Court explained:

> Petitioners' arguments about the plain meaning of Section 36B
> are strong. But while the meaning of the phrase "an Exchange
> established by the State under [42 U.S.C. 18031]" may seem
> plain "when viewed in isolation," such a reading turns out to be
> "untenable in light of [the statute] as a whole." In this instance,
> the context and structure of the Act compel us to depart from
> what would otherwise be the most natural reading of the
> pertinent statutory phrase.

*Id.* at 497 (citation omitted).

1    The Ninth Circuit has prescribed a similar interpretive approach.  In

2  *California River Watch v. City of Vacaville*, the Ninth Circuit held that the word

3  "transportation" in a statute creating liability for the transportation of hazardous

4  waste did not include the movement of waste through a potable water system.  39

5  F.4th at 633.  Although the court acknowledged the plain meaning of the term could

6  be broadly construed to cover "any party who moves the waste," it nonetheless held

7  the term's meaning was limited by statutory context and structure.  *Id.* at 630.

8  Because the statute used the term "transportation" in proximity to the term

9  "transporter," which "carries a specific connection to the waste disposal process

10  throughout [the applicable statute]," the Ninth Circuit similarly limited the term

11  "transportation" to refer only to the deliberate removal of waste in connection with

12  the disposal process.  *Id.* at 632.  As the Ninth Circuit explained, "a word is given

13  more precise content by the neighboring words with which it is associated."  *Id.*

14  (quoting *United States v. Williams*, 553 U.S. 285 (2008)); *see also Osheske v. Silver*

15  *Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025) (interpreting the

16  VPPA and applying "the *noscitur a sociis* canon of construction [which] instructs that

17  [the court] 'avoid ascribing to one word a meaning so broad that it is inconsistent

18  with its accompanying words'") (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561,

19  575 (1995)).

20    Much like the term "transportation" in the statute analyzed in *Vacaville*, the

21  terms "goods or services" in the VPPA cannot be interpreted with rigid adherence to

22  dictionary definitions.  Indeed, "[t]he pure definitional meaning of words in isolation

23  shouldn't be confused with the plain meaning of the text."  *Paramount Global*, 133

24  F.4th at 651 (citation omitted).  When the VPPA is properly considered as an

25  interconnected statute, "'text and context point to the same place:' the expression

26  'goods or services' is limited to audiovisual ones."  *Id.* (citation omitted).  This

27  contextual interpretive approach is not, as Plaintiff derides, merely "insert[ing] text

28  that is not contained in the statute."  Opp'n. 13:17–18.  Far from it.  Departing from

REPLY IN SUPPORT OF DEFENDANT INSOMNIAC HOLDINGS, LLC'S MOTION TO DISMISS

literalism in favor of context-driven interpretation "is not just consonant with textualist interpretation, *it is required by it*." *Paramount Glob.*, 133 F.4th at 651 (emphasis added).

   3. *Plaintiff's approach also risks turning any website with embedded video into a VPPA defendant.*

  In addition to being out of step with Supreme Court and Ninth Circuit precedent, Plaintiff's literalist interpretation of the term "consumer" would expand the reach of the VPPA in a way clearly not intended by the statute's drafters. Drafted for a pre-internet economy, the VPPA was intended to address a specific issue—to ensure individuals who rent, purchase, or subscribe to videocassette tapes or similar video content from businesses dealing in video sales, rentals, or deliveries would not have their viewing choices leaked to the public. *See* Mot. 13–14. The VPPA's text, structure, and legislative history all point to this conclusion. *See id.* at 11–14. What the VPPA was never designed to do, however, was create a federal cause of action for a near-limitless class of individuals who watch free marketing videos on public-facing websites. Nor was it designed to subject to liability wide swaths of businesses that do not even sell, rent, or offer subscriptions to video content. *See id.* at 13–14; *see also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not . . . hide elephants in mouseholes."); *cf. W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721–24 (2022) (collecting Supreme Court cases holding that statutes should not be interpreted to delegate authority to agencies to wield power over significant economic or political matters unless Congress has spoken clearly, even if there is a "colorable textual basis" for such authority, because "extraordinary grants of regulatory authority are rarely accomplished through modest words, vague terms, or subtle devices" (cleaned up)).

  Plaintiff admits his proffered interpretation would also lead to untenable distinctions between functionally identical visitors to Insomniac's website. *See* Opp'n 17:26–18:20 (conceding that such visitors to the Insomniac website would be treated

1  differently under the VPPA, but arguing such a result is not "unreasonable").  But, as

2  the Supreme Court has counseled, "[s]tatutes should be interpreted to avoid

3  untenable distinctions and unreasonable results whenever possible." *Am. Tobacco*

4  *Co. v. Patterson*, 456 U.S. 63, 71 (1982); *see also supra* Section II.B.2.  The Court

5  should decline to assign meaning to the VPPA's terms that would result in such

6  arbitrary results.

   **C.  Defendant Did Not Knowingly Disclose Plaintiff's Personally
   Identifiable Information.**

   Plaintiff's allegations all revolve around the alleged disclosure of his Facebook

10 ID, which he claims was combined with his "Personal Viewing Information" and

11 transmitted to Facebook via the Facebook Pixel.  *See* Compl. ¶¶ 16, 23.  In its

12 Motion, Insomniac identified several "basic factual allegations" missing from the

13 Complaint, including whether Insomniac ever knew or had access to Plaintiff's

14 Facebook ID, an indispensable part of the PII Insomniac allegedly disclosed.  Mot.

15 16:5–10.

16 In his Opposition, Plaintiff refuses to address these omissions, arguing instead

17 that Insomniac's implementation of the Facebook Pixel itself suffices to establish

18 Insomniac's actual knowledge of any disclosure.  But Plaintiff's failure to allege that

19 Insomniac ever possessed the alleged PII is fatal to his VPPA claim because a party

20 cannot disclose information that it never possessed.  *See Eichenberger v. ESPN, Inc.*,

21 876 F.3d 979, 986 (9th Cir. 2017).  For this reason, Plaintiff has failed to plausibly

22 allege Insomniac knowingly disclosed Plaintiff's PII.

23 **III.   CONCLUSION**

24 For the foregoing reasons, Insomniac respectfully requests that the Court

25 dismiss Plaintiff's Complaint in its entirety and without leave to amend.

26

27

28

1    Dated:  May 5, 2025                    Respectfully submitted,

2                                            DTO LAW

3

4                                     By:  */s/ William A. Delgado*

5                                           William A. Delgado

6                                           Attorneys for Defendant

7                                           INSOMNIAC HOLDINGS, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28